UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 12-Cr-712 (SHS) |
| v. | |
| RUBEN DAVIS, | OPINION & ORDER |
| Defendant. | |

SIDNEY H. STEIN, U.S. District Judge.

Defendant Ruben Davis moves for a sentence reduction under the compassionate-release statute, 18 U.S.C. § 3582(c)(1)(A). (Def.'s Suppl. Mot., ECF No. 673; *see also* Def.'s Suppl. Mem., ECF No. 676.) The government opposes Davis's request. (Gov't Opp'n, ECF No. 679.) Because Davis has not established any of the statutory requirements for compassionate release, his motion is denied.

I. **BACKGROUND**

In January 2013, Davis was arrested and charged with various crimes in connection with his leadership of a massive drug-trafficking organization operating out of Upper Manhattan and the Bronx. (PSR ¶¶ 37, 40, 69.) Using multiple stash houses and a vast network of drug dealers, the organization distributed millions of dollars of crack cocaine and powder cocaine throughout New York City. (*Id.* ¶¶ 40–47.) To protect its territory and be able to attack rival drug dealers, the organization maintained an assortment of firearms, including a machine-gun. (*See id.* ¶¶ 37, 61.) On one occasion, Davis provided a firearm for an attempted murder-for-hire scheme that resulted in the shooting and severe wounding of an innocent bystander. (*See id.* ¶¶ 53, 55–56.)

Davis eventually pleaded guilty in accordance with a written plea agreement to two counts: (1) conspiracy to distribute crack and powder cocaine in violation of 21 U.S.C. § 841(b)(1)(D); and (2) using, carrying, and possessing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id.* ¶¶ 2–3, 13.) Under the plea agreement, Davis stipulated, among other things, that his conspiracy involved between fifteen and fifty kilograms of cocaine, that he was an organizer or leader in the conspiracy, and that he had four criminal-history points. (*Id.* ¶ 13(c)–(d), (h).)

In February 2015, this Court sentenced Davis to 228 months' incarceration, comprising 168 months for his conviction for conspiracy to distribute cocaine and a mandatory consecutive 60 months for his section 924(c) conviction. (J., ECF No. 563.) Davis is now serving his sentence at the Federal Correctional Institution in Danbury,

Connecticut (FCI Danbury). He has served approximately eight years—around 50%—of his sentence, and his projected release date is February 10, 2029.

In April 2020, after experiencing "a runny nose, cough, and multiple joint pains for about a week," Davis tested positive for COVID-19. (Gov't Opp'n at 5; *see also* Def.'s Suppl. Mem. at 6.) He was placed in isolation and, after reportedly feeling better, was released back into the general population. (Gov't Opp'n at 5.) Davis has reported no lingering symptoms and ultimately tested negative for the virus a few weeks after he had tested positive. (*See id.*)

Later that month, Davis filed a request with the warden of FCI Danbury for compassionate release under 18 U.S.C. § 3582(c)(1)(A), a request that was ultimately denied. (*See* Albergo Decl. Ex. 3 at 1, ECF No. 675-3.) Davis then filed a pro se request for compassionate release with this Court. (Def.'s Pro Se Letter, ECF No. 668; *see also* Def.'s Pro Se Mot., ECF No. 681.) After the Court appointed counsel in accordance with the Criminal Justice Act, Davis filed another motion supplementing his request for compassionate release. (Def.'s Suppl. Mem. at 1.) The government opposes Davis's motion. (Gov't Opp'n at 1.)

## II. Discussion

Davis seeks a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), known as the "compassionate release" statute.[1] "From the statutory text, three requirements for a sentence reduction under the compassionate-release statute can be derived." *United States v. Torres*, No. 87-Cr-593 (SHS), 2020 WL 2815003, at *5 (S.D.N.Y. June 1, 2020). First, there must be "extraordinary and compelling reasons warrant[ing]" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Second, "such a reduction" must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). Third and finally, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). The Court finds that none of these requirements has been satisfied.

### A. There Are No Extraordinary and Compelling Reasons for a Sentence Reduction

Davis argues that "[t]he severe outbreak of the COVID-19 at the prison where [he] is housed, combined with his vulnerability to the disease because of his medical conditions, put[s] [him] at particular risk." (Def.'s Suppl. Mem. at 6.) Thus, Davis claims, "[t]he grave

---

[1] The compassionate-release statute authorizes a district court to reduce a sentence only after a defendant has exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Here, the government concedes that "Davis has exhausted his administrative remedies." Gov't Opp'n at 6 n.3.

2

risk to [him] from continued incarceration provides a compelling reason for his immediate release." (*Id.*) The Court disagrees.

To begin with, unlike the defendants in the mine-run of compassionate-release motions during the COVID-19 pandemic, Davis has already contracted the novel coronavirus. Several courts have reasoned that, once a defendant has already contracted COVID-19, a compassionate-release motion is no longer "about the adequacy of preventive measures to ensure that a defendant does not contract the virus or the potential risk to him or her—particularly due to one or more underlying health conditions—if he or she were to do so." *United States v. Zubkov*, No. 14-cr-773 (RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020). Those courts have "focuse[d] instead on [the defendant's] present need for medical treatment and the adequacy of the treatment that he is receiving." *Id.*; *accord United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020).

Here, although Davis claims that "he is still suffering lingering symptoms such as chest pains and numbness on his left side," he does not suggest that his medical care at FCI Danbury is inadequate or that whatever symptoms he still experiences are attributable to the care he is receiving.[2] (Def.'s Suppl. Mem. at 12.) As Davis himself recognizes, "expectations from health experts" are that "COVID-19 can have long-term effects on those who contracted it," even outside prison. (*Id.*)

Instead, Davis's argument focuses on "[t]he dire circumstances regarding the COVID-19 outbreak at FCI Danbury, combined with Mr. Davis's particular vulnerability to complications and risk of reinfection." (*Id.* at 13.) Although Davis has contracted—and recovered from—COVID-19, he maintains that "[t]here is no conclusive science to show that individuals who have had COVID-19 and subsequently tested negative are immune from reinfection." (*Id.* at 12.) Davis also notes that he suffers from "pre-diabetes, elevated blood pressure/hypertension, and obesity," all of which "make [him] high risk for complications if he again contracts COVID-19." (*Id.* at 3 (footnotes omitted).)

Although the Court understands Davis's concerns of reinfection, it cannot conclude that this risk is an extraordinary and compelling reason for a significant sentence reduction. On this point, Judge Kaplan's recent decision in *United States v. Decker*, No. 17-rcr-0738 (LAK), 2020 WL 3268706 (S.D.N.Y. June 17, 2020), is instructive. Like Davis, the defendant there "move[d] for compassionate release on the basis that he contracted

---

[2] To the extent that Davis does claim that his medical care is inadequate, that claim is belied by his medical records. Davis was promptly isolated and treated for COVID-19 after testing positive, and he "did not complain of lingering effects of COVID-19" in any recent interaction with prison staff. (Gov't Opp'n at 8.) The government also asserts—and the Court has no reason to doubt—that "[i]f Davis's condition changes, FCI-Danbury will treat Davis, including taking him to a hospital, if appropriate, under the circumstances." (*Id.*)

3

COVID-19 in prison, although he ha[d] recovered, and allegedly [was] at a greater risk than others of complications arising from the virus." *Id.* at *1. More specifically, "[i]n light of the COVID-19 pandemic and his infirmities, his hypertension in particular, defendant argue[d] that there [were] extraordinary and compelling reasons justifying an early release" based on the risk "that he [might] become reinfected with the virus if he remain[ed] incarcerated." *Id.* at *2.

Judge Kaplan rejected this argument. Despite acknowledging that the defendant "ha[d] unstable and elevated blood pressure and that hypertension ha[d] been associated with an increased risk of complications from COVID-19," he concluded that "this [was] not enough to warrant compassionate release, even in the present circumstances." *Id.* As he explained: "However remote or probable, the possibility of reinfection is speculative, as no definitive medical conclusions have been reached on prior infection with COVID-19 results in immunity from future infection (as is the case with some but not all viral infections) and, if so, the duration of any such immunity." *Id.*

The Court agrees. In establishing the federal sentencing scheme, Congress imposed a "rule of finality" by "forbidd[ing], as a general matter," courts from "modify[ing] a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)). As an exception to this general rule, the compassionate-release statute has "limited scope." *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020); *cf. Dillon v. United States*, 560 U.S. 817, 827 (2010) (noting that a similar exception, 18 U.S.C. § 3582(c)(2), was intended to be "a narrow exception to the rule of finality"). The statute provides an avenue for only the rare case in which—in the words of the statute—"extraordinary and compelling reasons" truly justify a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). Given the limited scope intended by Congress for compassionate release, the Court cannot conclude that the speculative risk of reinfection is either "extraordinary" or "compelling" within the meaning of the statute.

### B. A Sentence Reduction Would Not Be Consistent with the Sentencing Commission's Policy Statements

The relevant U.S. Sentencing Commission policy statement for compassionate release, section 1B1.13 of the Sentencing Guidelines, adds one substantive requirement for compassionate release: a sentence reduction is warranted only if "[t]he defendant is not a danger to the safety of any other person or to the community." U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018) [hereinafter U.S.S.G.]; *see also* 18 U.S.C. § 3142(g).

The Court cannot make that determination here. Nothing about "the nature and circumstances of the offense," 18 U.S.C. § 3142(g)(1), suggests that Davis would not pose

4

a danger if released. As the government notes, in committing his crimes, Davis used his intelligence and skills "to operate a lucrative business through intermediaries while distancing himself from capture" and in fact "enlisted his nuclear and extended family—his father, brother, and cousins—in his crimes." (Gov't Opp'n at 14.) In a similar vein, the Court noted at sentencing that "incapacitation [was] important here" to protect the community from Davis. (Sentencing Tr. at 34:8–9.)

In response, Davis maintains that, at forty-four years old, "he is unlikely to recidivize." (Def.'s Suppl. Mem. at 18.) Davis, however, was already in his late thirties when he engaged in the violent conduct for which he was sentenced here, conduct that followed an already-significant criminal history. (Gov't Opp'n at 14.) Thus, the Court does not believe that Davis's current age establishes that he is not a danger to the community. *See* 18 U.S.C. § 3142(g)(3).

What is more, the government notes that, "while incarcerated, Davis skirted prison rules and apparently reached beyond the prison walls" to possess cellphones and related contraband, for which he was disciplined twice. (Gov't Opp'n at 14.) Thus, Davis's conduct in prison further undermines his claim that he is no longer a danger to the safety of the community.

Because the Court cannot find that Davis "is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), a sentence reduction would not be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A).

### C. The Section 3553(a) Factors Do Not Favor a Significant Sentence Reduction

Section 3553(a) instructs that, in "impos[ing] a sentence sufficient, but not greater than necessary," a court should consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to facilitate retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(1)–(2).

Those factors weigh heavily against a sentence reduction here. As set forth above, Davis pleaded guilty to participating in a sprawling drug-trafficking conspiracy that involved large amounts of crack and powder cocaine. (*See* PSR ¶¶ 37, 40.) Davis's role in this conspiracy cannot be overstated. (*See id.* ¶¶ 13(d), 40.) As one of the conspiracy's leaders, Davis drove the distribution of millions of dollars of cocaine throughout New York City and oversaw numerous subordinates. (*Id.* ¶¶ 40, 60, 67.) And prior to the conduct at issue here, Davis had an extensive criminal history, with multiple drug-related convictions in New York state court. (*Id.* ¶¶ 97–111.)

Thus, as the government correctly notes, Davis's case is nothing like those in which other district courts have granted compassionate release. (*Compare* Gov't Opp'n at 12–13,

5

*with* Def.'s Suppl. Mem. at 16.) The principal case that Davis cites, *United States v. Barber*, No. 6:18-cr-00446-AA, 2020 WL 2404679 (D. Or. May 12, 2020), involved a low-level drug dealer without a significant criminal history. *See id.* at *1, *5. Indeed, the district court there recognized that, although the defendant was sentenced to sixty months' incarceration, the statutory minimum, he "ha[d] a criminal history category of 1 and a total offense level of 23, which resulted in an advisory guideline range of 46 to 57 months." *Id.* at *5. Here, by contrast, the seriousness of Davis's conduct and his extensive criminal history led to a Sentencing Guidelines range of 228 to 270 months. (*See* PSR ¶¶ 140, 144.)

To be sure, not all of the section 3553(a) factors weigh against a sentence reduction. Section 3553(a) directs a sentencing court to consider "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a)(2)(D). As many courts in this district have concluded, "the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals." *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020). That may be particularly true for Davis, who—as detailed above—suffers from a high-risk condition and has in fact already contracted COVID-19. *See supra* Section II.A. Further, the Supreme Court has noted that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." *Pepper v. United States*, 562 U.S. 476, 491 (2011). To that end, the Court commends the significant strides Davis has made toward rehabilitation, including the completion of his GED and other educational courses. (Def.'s Suppl. Mem. at 14–15.)

Still, the Court finds that these factors do not overcome the other section 3553(a) factors. *See United States v. Butler*, No. 19 CR. 834-10 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (the "need to provide the defendant with needed . . . medical care" was "outweighed by the combined force of several other factors" (quoting 18 U.S.C. § 3553(a)). At Davis's sentencing, the Court noted that "the extreme seriousness of the offense and the need for punishment and deterrence," among other factors, justified the 228-month sentence of incarceration. (Sentencing Tr. at 34:7–16.) To date, he has served approximately 50% of that sentence. (*See* Def.'s Suppl. Mem. at 5; Gov't Opp'n at 7.) The Court cannot conclude that, even considering the health risks posed by COVID-19 and Davis's steps taken toward rehabilitation, the sentencing factors that supported a 228-month sentence now favor a 50% sentence reduction. *See United States v. Francisco*, No. 19 CR. 131 (PAE), 2020 WL 3507958, at *3 (S.D.N.Y. June 29, 2020) (concluding that "a reduction in sentence would be inconsistent with the § 3553(a) factors" when the defendant "ha[d] served just over half of his sentence").

### III. CONCLUSION

For the reasons set forth above, Davis's motion for a sentence reduction under 18 U.S.C. § 3583(c)(1)(A) is denied.

Dated: New York, New York
      July 7, 2020

SO ORDERED

*[signature]*

SIDNEY H. STEIN
U.S.D.J.